# District Court (Eastern)

Plaintiffs: Jeremy Lockett and
Terrance Prude

-vs-                                    Case No. _____

Defendants: Lebbeus Brown, Lt. Taylor,
Capt. Tom, Warden Boughton, and Warden Radtke

## -Civil Complaint-

### -Exhaustion Of Remedies-

(1) Plaintiffs, Jeremy Lockett and Terrance Prude, both exhausted the administrative remedies related to the conduct reports that is the subject of all claims.

(2) The remedies are limited to the hearing and appeal to the Warden the constitutional (i.e. substantive) claims. See Madyum v. Cook, 2008 U.S. Dist. Lexis 41359, at 8 (W.D. Wis. 2008). Only procedural errors, which challenges policies, are raised in the inmate complaint system.

### -Parties-

(3) Jeremy Lockett is currently imprisoned at Wisconsin Secure Program Facility ("WSPF"); P.O. Box 1000. Boscobel, WI 53805 where the claims related to this action occurred.

(4) Terrance Prude was imprisoned at WSPF during the claims related to this case but was subsequently transferred to Green Bay Correctional Institution ("GBCI") where he's currently housed, address: P.O. Box 19033 Green Bay, WI 54307.

(5) Lebbeus Brown, Lt. Taylor, Capt. Tom and Warden Boughton are all employed at WSPF 1101 Morrison Dr. in Boscobel, WI 53805.

(6) Warden Radtke is the warden at GBCI, 2833 Riverside Drive, Green Bay, WI 54301.

(7) All defendants (with the exception of Warden Radtke) are sued in their Individual Capacities. Only Warden Boughton and Warden Radtke are sued in their Official Capacities. All defendants actions occurred under color of state law.

### -Statement Of Claim-

(8) Defendants violated Terrance Prude and Jeremy Lockett's rights by failing to provide notice of prohibited conduct in violation of the 14th Amendment.[1] These are "as applied" challenges to DOC 303.24(3) and DOC 303.47(2)(A). Also, 1st Amendment.[1A]

### -Statement Of Facts-

(9) Prude's religion is Growth & Development (which is registered by the DOC).

(10) There are religion-teachings that guide the behavior of those who are members of the religion.

(11) Prude sought to raise a claim to the court regarding his religious tenets and religious discrimination.

(12) Lockett is also a member of the religion supra at par 9.

(13) Lockett was notified by Prude that he (Prude) was about to file a lawsuit related to supra at par 11.

(14) Lockett told Prude he was interested in joining Prude as a co-plaintiff on raising the claim listed supra at par 11. Prude agreed to be a co-plaintiff with Lockett in filing a 42 U.S.C. 1983 action in federal court.

---

[1] See Rios v. Lane, 812 F.2d 1032, at 1038 (7th Cir. 1987).
[1A] Defendants also violated plaintiffs' 1st Amendment rights to free speech. See Jones v. O'Donovan, 2015 U.S. Dist. Lexis 164798 (W.D. Wis. 2015).

(15) Prude had a case in court that had evidence to support the the claim that he and Lockett intended to file together.

(16) The evidence was the tenets of Growth & Development.

(17) Prude notified Lockett of this and Lockett was interested in doing an open records request in the case to purchase these exhibits from the Court.

(18) Lockett did not know how to do an open records request and he sought legal assistance from Prude to help write up the open records request and Prude hand-wrote up an open records request letter to the Western District Court Clerk for Lockett and gave it to Lockett during recreation.[1B] No policy forbids this.

(19) Lockett attached a money disbursement form with the open records request letter (authored by Prude) and sent it to the prisons business office so that a check in the amount of $11.60 can be mailed to the court with the open records request letter. See footnote "1B" below. No policy forbids this activity.

(20) The business office processed Lockett's request and mailed the check with the records-request letter to the court clerk. No policy forbids this activity.

(21) The Court Clerk processed the request and shipped the purchased documents to Lockett. See footnote "1B". No policy forbids.

(22) Since the documents are legal-mail, the envelope must be opened, checked for contraband (and any security concerns) in front of Lockett.

(23) The legal mail was opened, checked for contraband (and security concerns) in front of Lockett and all the documents cleared screening by the unit sergeant and the materials were given to Lockett.

[1B] This was First Amendment activity for Lockett/Prude.

(24) Weeks later, Lockett was subjected to a cell search and the documents were confiscated by staff.[1C]

(25) The documents had Prude's case number on it and prison staff investigated the documents to find out whose case the evidence belonged to and found out the evidence came from Prude's case. No policy forbids Lockett/Prude's intended use of evidence.

(26) The investigator, Lebbeus Brown, reviewed the docket which showed the open records request letter that Prude authored for Lockett (Note: Inmates are allowed to aid each other in this fashion).[1C]

(27) Brown determined Prude wrote the open records request letter (which Prude does not dispute) and decided to write Prude and Lockett a disciplinary conduct report alleging Prude and Lockett both engaged in actions that violated DOC 303.24(3) Group resistance & Petitions and DOC 303.47(a)(A) Possession of Contraband-Miscellaneous. This violated plaintiff's rights. See par 8, supra.

(28) The disciplinary conduct report alleged that Prude and Lockett violated DOC 303.24 and 303.47 by: (A) Prude writing the open records request letter for Lockett; (B) Lockett using the open records request letter to obtain the documents from the Court; (C) Possessing the religious materials/evidence; (D) Associating or identifying with the content of the religious materials/evidence; (E) Trying to organize "gangs" with the materials/evidence received from the Court; (F) Lockett/Prude being members of the religion.

(29) At the hearings, Lt. Taylor and Captain Tom each condoned/permitted Brown's actions by finding Prude and Lockett guilty in the face of the fact **none** of the policies Prude and Lockett were found guilty of provided notice that Prude/Lockett's actions were prohibited "as applied" to Prude/Lockett's circumstances.[1C]

(30) Prude and Lockett both received 120 days disciplinary separation and after the disciplinary segregation time ended, Prude's & Lockett's segregation stay was extended based on the

[1C] This violated the 1st Amendment. The contents "speech" & intended use suppressed.

same allegations supra at par 27-28.[a]

(31) Prude and Lockett are still currently in segregation because of the allegations supra at par 27-28 in which turns out to be longer than 120 days. The extended segregation based on par 27-28, supra, was continued via administrative segregation.

(32) Segregation ~~████~~ has been extended in a aggregated[a] fashion exceeding ~~████~~ 365 days from the combined disciplinary & administrative segregation. Moreover, the 120 days disciplinary sentence also extended Prude's & Lockett's segregation, i.e. Prude/Lockett ~~█~~ had already been doing segregation time prior to receiving the 120 days.[a]

(33) Prior to the 120 days being imposed Prude/Lockett had already been in segregation for at least 180 days. This segregation stay also must be counted in the "aggregate" in determining whether Prude/Lockett has a liberty interest. See Footnote 2 below. Lockett/Prude's 120 days started November of 2018.

(34) Prude/Lockett both appealed their punishments to Warden Boughton and he, like Lt. Taylor & Capt. Tom, condoned the punishments by affirming the punishment in the face of knowing the policies Prude/Lockett were accused of violating did not provide notice of prohibited conduct "as applied" to the circumstances. He also condoned the 1st Amendment violations.

(35) Warden Radtke is only named as a defendant for injunctive[aA] purposes as described in par 39-41 below due to Prude being currently housed at GBCI under Radtke's authority.

---

[a] Court's have held that it is proper ~~████~~ to "aggregate" distinct periods of confinement in determining whether an inmate has a liberty interest under Sandin v. Conner, 515 U.S. 472, 485-486 (1995). See Marion v. Columbia Correctional Inst., 559 F.3d 693, 699 (7th Cir. 2009); Sims v. Artuz, 230 F.3d 14, 23-24 (2nd Cir. 2000); Sealey v. Giltner, 197 F.3d 578, 587-88 (2nd Cir. 1999); Giano v. Selsky, 238 F.3d 223, at 226 (2nd Cir. 2001).

[aA] See Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011).

### -Jury Demand-

(36) Prude/Lockett request a jury trial.

### -Relief Requested-

(37) Lockett/Prude request $50,000 compensatory damages (each).

(38) Lockett/Prude request $25,000 punitive damages (each).

(39) Prude/Lockett request a injunction which removes them from ~~~~ segregation seeing the basis of the case is a basis to sustain them in segregation.

(40) Lockett/Prude request a injunction to place them in general population in the individual prisons their housed at.

(41) Lockett/Prude request a injunction to expunge conduct reports #3211597 and #3141599 seeing they are unlawful.

(41) Lockett/Prude request a declaratory judgment that the defendants violated their ~~~~ 14th Amendment rights, and their 1st Amendment rights.

(42) Lockett/Prude request any further relief deemed appropriate by this court.

### -Signatures-

- Terrance Prude: *Terrance Prude* #335678 Signed On: 10-20-19
- Jeremy Lockett: *Jeremy Lockett* #511912 Signed On: 11-1-2019